**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DARLINE HEMSING**,**

Plaintiff - Appellant,

v.

PHILIPS SEMICONDUCTORS, a
foreign corporation, and PHILLIP
EDELMAN, individually,

Defendants - Appellees.

No. 98-2033

(D. New Mexico)

(D.C. No. CIV-96-0172)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO** and **LUCERO**, Circuit Judges, and **COOK**,[**] District Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     The Honorable H. Dale Cook, Senior United States District Judge for the
Northern District of Oklahoma, sitting by designation.

argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

Plaintiff-appellant Darline Hemsing (Hemsing), appeals from the district court's order granting summary judgment to defendant-appellee Philips Semiconductors (Philips), on plaintiff's claims of disability discrimination, retaliation and several state law claims related to her alleged wrongful termination, and to defendant-appellee Phillip Edelman (Edelman) on plaintiff's claims for defamation, intentional interference with contractual relations, prima facie tort and intentional infliction of emotional distress. We exercise jurisdiction under 28 U.S.C.§ 1291, and affirm.

Hemsing, a registered nurse, was employed by Philips as an occupational health nurse and supervisor of its in-house health services unit from May, 1993 to August, 1994, when her employment was terminated. Hemsing claims that she was terminated in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et. seq.* Hemsing alleges that she became disabled in the 1970's when she was involved in two separate vehicle accidents, the first as a pedestrian and the latter as a passenger on a motorcycle. Hemsing alleges that these accidents caused injuries to her legs and back which restricts her mobility. Hemsing claims she is unable to lift any significant amount of weight, perform strenuous physical tasks, run, walk long distances, work without the assistance of pain medication, or work more than a 40-hour work week. She claims that her pain tolerance is worse as the day progresses.

At the commencement of her employment with Philips, Hemsing informed Philips that she was disabled and requested that Philips accommodate her by permitting her to work the early shift from 5:00 a.m. to 2:00 p.m. Philips agreed. Hemsing claims that after she was hired, her supervisor, Richard Timmons, attempted to modify her work shift. Plaintiff again requested accommodations through a letter from her private physician, who recommended against changing her work schedule. A company-approved physician concurred with the recommendation of Hemsing's private physician. Hemsing's shift was never changed. In October, 1993, Hemsing wrote to the Human Resource Manager at Philips complaining of violations of the ADA, against her and other employees. These complaints included the failure to accommodate her disability, the lack of adequate handicapped parking spaces, and the denial of educational benefits. In January, 1994, Hemsing applied for the position of Safety Supervisor at Philips. In late March, 1994, James Cochran assumed the position of Safety Supervisor and became Hemsing's supervisor. In reviewing Hemsing's performance in April, 1994, Cochran investigated complaints against Hemsing of poor care of three employees at Philips, and substandard work. Following the inquiry, Cochran recommended that Hemsing be placed on decision-making leave, which is Philips' term for disciplinary action. Hemsing was told not to come to work on April 18 and to either commit herself to "meeting expectations or to voluntarily resign." Based on this action, Hemsing told Cochran that she was going to

3

file a complaint with the Office of Federal Contract Compliance Programs (OFCCP) and she did so on April 16.

Also in April, 1994, Cochran consulted with Mr. Jim Casey, Philips' corporate counsel, for authorization to go outside the company and hire a consultant to conduct an audit of Philips' health services unit. Authorization was given to hire a California physician, defendant-appellee Dr. Phillip Edelman, as the consultant. Edelman spent two days in June, 1994, interviewing Hemsing and others, and reviewing the charts, medical records, practices and emergency procedures of the health services unit. At the conclusion of his review, Edelman presented Philips with an outline of how the health services unit should be organized and operated. Edelman returned to Philips on a second occasion specifically to interview Hemsing regarding his assessment of "inexplicable deficiencies" in employee medical charts and in the emergency care procedures used by Hemsing. Edelman submitted the medical records and charts to a New York physician, Dr. Robert Hoffman, for an independent review. In early July, 1994, Hoffman informed Edelman that he concurred with his evaluation. Edelman sent Philips' legal counsel a letter dated July 6, 1994, which opined that Hemsing's "clinical skills are seriously below the level of competence expected for her job" and "the quality of her charting is seriously deficient and below the standard of care." Edelman concluded that Hemsing's clinical assessment, judgment, supervision, and knowledge of fundamental issues for critical patients are "grossly beneath the standard of care necessary and customary" and in

"several instances seriously endangered the *life* and well being of employees." (emphasis in text). Hemsing was terminated shortly thereafter. Hemsing filed this suit, contending the actions of Philips in terminating her employment violated the ADA.

"We review a grant of summary judgment de novo. We apply the same standard under Fed.R.Civ.P. 56(c) used by the district court: we determine whether a genuine issue of material fact was in dispute, and, if not, whether the substantive law was correctly applied." Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1081 (10th Cir.1997).

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) the employer terminated her employment because of her alleged disability. See, White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir.1995).

To be a disabled person within the meaning of the ADA, the individual must have (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Hemsing contends that her physical impairment substantially limits the major life activities of walking, standing, sitting, and working. In order for a physical impairment to be substantially limiting, the individual must be:

5

(i)   Unable to perform a major life activity that the average person in the general population can perform; or

(ii)  Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.  29 C.F.R. § 1630.2(j)(1).

The district court found that Hemsing failed to demonstrate that she is substantially physically impaired in a major life activity, including working.  It noted that working is a major life activity, but Hemsing's only limitations are (1) the need for an early morning shift; (2) a job that does not require her to run or walk briskly; and (3) hours of not more than 40 hours per week.  The record shows that Philips agreed to Hemsing's request to accommodate these limitations.  Hemsing claims, in the alternative, that Philips perceived her as disabled because she informed her supervisor that she was disabled prior to accepting employment with Philips.  There is no indication in the record of a causal link between the action taken by Philips in terminating Hemsing and her requests for limited accommodations.  The evidence supports the district court's conclusion granting summary judgment on Hemsing's claim for disability discrimination.[1]

---

[1]   Hemsing takes prescription pain medication and contends that it would be difficult for her to perform her job without such medication, and that she is substantially limited in the major life activities of walking, running, standing, lifting thinking and working without the use of medication.  Under Sutton v. United Air Lines, Inc., 527 U.S. ___, WL 407488 (1999), such corrective measures can be considered in evaluating the substantiality of a limitation on a major life activity.

Hemsing also brings a claim of retaliation. To establish a prima facie case of retaliation under the ADA, the plaintiff must demonstrate:

> (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action. Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir.1997).

The protected activities Hemsing claims are (1) her complaints about Philips' failure to accommodate other disabled employees; (2) her request for an early shift; and (3) the filing of the OFCCP charge in April, 1994. Hemsing's employment with Philips terminated four months later in August, 1994. The district court found that the first activity was too vague to consider, that Philips accommodated the second activity, and that the third activity occurred after Hemsing was disciplined for poor patient care. Additionally, the district court found that these activities were too remote in time to establish a causal connection of retaliation. We agree.

It is undisputed that Hemsing did not file her OFCCP charge until after she had been disciplined for poor patient care. The district court found that the undisputed facts established Hemsing's termination was a result of a process that had already been set in motion. The district court relied on Morgan v. Hilti, Inc., supra, in which the plaintiff's employment was terminated on January 16, 1995, five months after she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The court noted that the plaintiff had been receiving disciplinary action both before and after she filed the administrative charge. The termination, the court held, "simply completed the

disciplinary process already set in motion." 108 F.3d at 1324. Such is the case here. We therefore affirm summary judgment on Hemsing's claims under the ADA and her state law claims relative to wrongful discharge.

We affirm summary judgment for Edelman on the intentional interference with contractual relations because there is no contract of employment. Hemsing was, at all times, an employee-at-will. A claim of intentional interference with contract requires "the existence of a valid, enforceable contract." Tatum v. Philip Morris, Inc., 809 F. Supp. 1452, 1468 (W.D.Okla.1992), aff'd, 16 F.3d 417 (10th Cir.1993), cert. denied, 114 S.Ct. 1833 (1994).

We affirm summary judgment for Edelman on the claim of defamation because under New Mexico law there is a qualified privilege when the alleged defamatory communication is made in the discharge of a private or public duty. Zuniga v. Sears, Roebuck and Co., 671 P.2d 662, 664 (N.M.Ct.App.), cert. denied, 671 P.2d 1150 (1983). This privilege applies between parties who share a common business interest in the subject matter of the publication. See, Poorbaugh v. Mullen, 653 P.2d 511, 521 (N.M.Ct.App.), cert. denied, 653 P.2d 878 (1982). Edelman was hired by Philips to conduct the audit and his conclusions and opinions conveyed to Philips are subject to a qualified privilege. The district court correctly determined that there was no showing that Edelman acted in reckless disregard of the truth or falsity of the statements made or that he abused the privilege.

8

In light of our conclusion that Hemsing has failed to show that she is disabled within the meaning of the ADA or subject to retaliation, we need not address the other state law claims relating to wrongful discharge. The judgment of the United States District Court for the District of New Mexico is **AFFIRMED**.

Entered for the Court,

H. Dale Cook
Senior United States District Judge